28 C.C.P.A.(Patents)

## In re TAYLOR.
### Patent Appeal No. 4441.

Court of Customs and Patent Appeals.
June 9, 1941.

Charles C. Scheffler and Eugene L. Greenewald, both of New York City (Horace B. Van Valkenburgh, III, of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 6 and 11 in appellant's application for a patent for an alleged invention relating to a heating torch as defined in claim 6, and for a method of hardening metal objects as defined in claim 11.

The claims read:

"6. A heat treating torch comprising a burner end having a cooling chamber and a passage adjacent thereto *having an outlet* for discharging a jet of heating gas against a portion of a piece of work; means for supplying a combustible mixture of gases to said discharge passage; means for supplying water to said cooling chamber; and means for discharging, *from said burner end through an outlet closely adjacent the outlet through which the jet of heating gas is discharged,* such cooling water as a cooling jet directed at an angle away from said heating jet and against the work at a point spaced from the portion against which the jet of heating gas is discharged." (Italics ours.)

"11. A method of hardening metal objects which comprises directing a heating jet of high intensity from a burner end against a portion of the object to be heated; continuously supplying a cooling medium to said burner end and passing such cooling medium through said burner end so as to prevent overheating of the same; continuously directing said cooling medium as a cooling jet *discharged from said burner end through an outlet closely adjacent the outlet through which the heating jet is discharged and* against a portion of the object closely adjacent the portion against which said heating jet is directed, said cooling jet being directed at a slight angle away from said heating jet and normally impinging upon at least a portion of the object previously heated; and effecting a relative movement between said burner end and said object to apply said heating jet and said cooling jet concurrently to successive portions of said object." (Italics not quoted.)

The references relied upon are: Fouche (Fr.), 325,403, Jan. 16, 1903; Fouche (Fr.) 2,076 (addition to 325,403) Oct. 16, 1903; Boucher (Brit.), 225,333, Dec. 4, 1924; Fletcher et al. (Br.), 294,709, Aug. 2, 1928; Davis, 1,711,835, May 7, 1929; Le Boeuf, 1,775,532, Sept. 9, 1930; Davis et al., 1,901,-804, Mar. 14, 1933; Stoffel et al., 1,924,296, Aug. 29, 1933.

As will be observed from the appealed claims, the invention relates to the hardening of metal articles by means of a flame directed from the burner end of a torch against successive portions of a metal surface, together with means for discharging a cooling fluid from the burner end of the torch through an outlet closely adjacent the jet through which the heating gas is discharged and at an angle away from the heating jet. The apparatus defined in appealed claim 6 is so arranged that the cooling liquid cools the burner end as well as the heated surface of the article upon which the work is being performed.

The patent to Fouche, No. 325,403, and the addition thereto, No. 2,076, disclose means of cooling the jet end of a blowpipe nozzle. There is no disclosure in those patents, however, of means for cooling the metal surface being treated.

The patent to Boucher discloses a fuel supply tube and a burner for directing a heating flame against the surface of a railway car wheel which is arranged to rotate in front of the burner. A water conduit having a nozzle is attached to the fuel conduit, the nozzle being arranged just below the burner "so that a jet of cooling liquid is directed against the surface of the wheel immediately behind that part of the surface on which the heating flame is impinging." There is nothing in the patent to indicate that the patentee intended that the cooling liquid should, or, in fact, would, cool the burner end.

The patent to Fletcher et al. discloses a torch for hardening gear teeth. The torch includes a plurality of heating jets and a plurality of nozzles for cooling the heated surface of the article being treated. The cooling nozzles are arranged in the rear of the heating jets. There is no suggestion in the patent of cooling the burner ends.

The patent to Davis, No. 1,711,835, relates to a method of manufacturing malleable disk automobile wheels, and particularly to the method of hardening the brake drum portion of such wheels. The patentee discloses a torch for directing a heating flame against the article to be hardened. The torch is provided with a water nozzle "substantially opposite the po-

sition of the oxy-acetylene nozzle." By the patentee's arrangement, the flame and the cooling liquid are directed against opposite sides of the brake drum. The patentee also discloses a tank of water into which the wheel and the drum revolve immediately after the flame has been applied thereto. The Primary Examiner stated that this patent discloses a "water cooled flame hardening torch," and that the water passes through "the tube 28 to the torch 18 to cool the same."

We do not so understand the patent. The tube 28, referred to by the Primary Examiner as being a water tube, is described in the patent as an air pipe to furnish air to the fuel supply.

The patent to Le Boeuf relates to a welding device for welding relatively thin sheets of metal, and discloses a torch having a nozzle or jet from which a flame is directed against a seam to be welded. Attached to the body of the torch is a tube designed to supply a cooling liquid to the sheet being welded at points spaced from either side of the flame for the purpose of preventing the sheets from warping or buckling during the welding operation. There is no suggestion in this patent of an arrangement for cooling the heating nozzle or jet.

The patent to Davis et al., No. 1,901,804, relates to a process for removing carbon from tubes, and discloses a torch having, as stated by the Primary Examiner, a central passage through which compressed air is supplied and another passage "positioned to project a jet at an angle to the central passage." That patent was not relied upon by the Board of Appeals and has no application to the issues in this case.

The patent to Stoffel et al. discloses a blowpipe burner for directing a heating flame against a crank shaft. The patentees also disclose two nozzles for directing quenching liquids against the heated portion of the crank shaft. The crank shaft is rotated in such manner that each successive portion of its surface becomes heated as it passes under the blowpipe burner and is immediately thereafter cooled by water discharged first from one and then the other of the quenching nozzles. The patentees' blowpipe burner is also supplied with a tube carrying cooling water to prevent the burner end from overheating. The water from the latter tube, after cooling the burner end, is conveyed rearwardly from the burner end by another tube. It is not used to quench the article being hardened.

Appealed claim 6 was rejected by the Board of Appeals on the patent to Stoffel et al. in view of the patents to Fletcher et al., Boucher, and Le Boeuf. Omitting the reference letters, we quote from the board's decision:

"Appellant argues that in the Stoffel et al. disclosure the water cooled burner is separate from the quenching and cooling nozzles, but that the water that cools the burner does not serve as a work quenching medium. It is also argued that each of the quenching nozzles of Boucher, Fletcher et al. and Stoffel et al. is separate and independent from the burner and that there is no suggestion in any of these references that the heat treating torch defined in claim 6 should be provided with means for discharging the cooling water from the burner against the work.

"While it is true that no one of these patents discloses the actual cooling fluid as performing a cooling function on both the burner and the work, the Stoffel et al. patent does disclose the use of cooling fluid for the burner and it is considered that it would not amount to invention to use the same cooling fluid that passes through the burner of Stoffel et al. as a cooling medium on the work. These patents contain the suggestion of cooling both the burner and the work and it is believed that to use the same cooling fluid for both, as indicated in claim 6, does not amount to a patentable improvement.

"Appellant has proposed certain amendments to claims 6 and 11, but it is believed that these amendments would not render the claims patentable. Hence, they have not been considered. It is recommended that the proposed amendments to claims 6 and 11 be entered for purposes of appeal, if applicant so desires."

The amendments to the claims referred to in the quoted excerpt from the board's decision are the italicized portions of the claims hereinbefore quoted.

Claim 11 was rejected by the board on the patents to Fletcher et al. on Boucher in view of Stoffel et al. and Davis, the board stating: "It is the examiner's position that since the art has recognized that the torch should be cooled, it would not amount to invention to pass the cooling or quenching fluid through the torch to produce a larger

amount of cooling of the torch and also that to have the single cooling jet directed at a slight angle to the heating jet does not amount to a patentable variation."

It will be observed that the only reference which discloses means for cooling both the heating jet and the work being treated is the patent to Stoffel et al. However, as hereinbefore stated, that reference discloses a water supply tube for cooling the heating jet and also two other water supply tubes for cooling the heated crank shaft. There is no suggestion in that patent, nor in any of the references of record, of providing a torch with a liquid supply tube for cooling both the heating jet and the article being treated.

The patent to Stoffel et al. might, of course, be modified *in the light* of appellant's disclosure so as to provide liquid supply means for cooling the heating jet end and the article being heat treated. However, such modification would eliminate two of the quenching nozzles disclosed in the patent without eliminating their functions, and would require a rearrangement of the quenching nozzle disclosed therein for cooling the heating jet. Such a modification of the structure disclosed by Stoffel et al. is not suggested by the references, either singly or in combination, nor do we think such a modification would be obvious to one skilled in the art.

It is contended by counsel for appellant that by appellant's arrangement the cooling liquid is discharged from the cooling nozzle in close proximity to the heating flame without interfering with the heating operation; that a more effective transfer of heat from the burner end to the cooling medium takes place because of the fact that the cooling medium comes into direct contact with the metal of the burner end; and that a larger amount of the cooling liquid may be discharged against the heated surface of the work, thereby preventing reheating of a quenched and hardened surface portion "by residual heat in another portion of the body being treated."

It is apparent that appellant's structure is more compact and, therefore, may be handled with greater ease than the prior art structures, and that the hardening operation can be carried out more effectively and efficiently.

Claim 11 defines the process carried out by the structure defined in appealed claim 6.

For the reasons herein stated, we are constrained to disagree with the views expressed by the tribunals of the Patent Office that the appealed claims do not involve invention. Accordingly, the decision of the Board of Appeals is reversed.

Reversed.